UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 05-CV-10649-WGY

RICHARD MONAHAN,

     Plaintiff

v.

TOWN OF SALISBURY, and RICHARD A.
WHALEY, IORA ALEXANDER, KEVIN
AVERY, PATRICIA FOWLER, DAVID
HOLSCHER, THOMAS HUGHES, and JANE
PURINTON, as they are the
CONSERVATION COMMISSION OF THE
TOWN OF SALISBURY,

     Defendants

MEMORANDUM OF LAW IN
SUPPORT OF PARTIAL
MOTION FOR JUDGMENT
ON THE PLEADINGS

I.     INTRODUCTION

The plaintiff, Richard Monahan ("Monahan"), has filed a six count complaint against the

defendants Richard A. Whaley, Iora Alexander, Kevin Avery, Patricia Fowler, David Holscher,

Thomas Hugues, and Jane Purinton, each as members of the Conservation Commission of the

Town of Salisbury (collectively, the "Conservation Commission" or, the "Commission") and the

Town of Salisbury (the "Town"). Counts 1-3 assert an untimely appeal of the decision of the

Conservation Commission to deny the plaintiff an Order of the Conditions for property at 479

North End Boulevard, Salisbury, Massachusetts (the "Property"). The negative Order of

Conditions was issued on December 21, 2004. The plaintiff's remedy to the Court is provided

by G.L. c.249 §4, but is limited to sixty days "after the proceeding complained of." G.L. c. 249

§4. The time to appeal the decision therefore expired on February 19, 2005. The Complaint was

not filed in Essex Superior Court until February 24, 2005.

Count 4 of the Complaint avers that decision of the Commission constituted an uncompensated taking of Monahan's property in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Count 4 is not ripe for adjudication by this Court. It is well established that takings claimants must initially seek remedy under state law before advancing a parallel claim under the federal constitution. Monahan does not claim to have even commenced, let alone completed, an action to seek compensation for the alleged taking should therefore be dismissed.

In Count 5, Monahan alleges that the decision also deprived him of his equal protection rights under the Fifth and Fourteenth Amendments of the United States Constitution. Monahan does not assert membership in a constitutionally protected class, nor does he allege any facts to support a claim that the Commission treated him in an intentionally disparate manner for an improper or impermissible reason. Count 5 should therefore be dismissed.

Count 6 challenges the validity of the Town of Salisbury Wetlands Bylaw. The defendants do not seek the dismissal of Count 6 at this time.

The Town and the Commission respectfully request that this Honorable Court dismiss Counts 1 through 5 of the Complaint in the above-captioned action against them.

II.    FACTS & PROCEDURAL HISTORY[1]

1.    Monahan is the owner of a parcel located at 479 North End Boulevard, Salisbury, Massachusetts ("the Property"). Complaint, ¶5.

2.    North End Boulevard, also known as Route 1A, runs north to south, with a barrier beach to the west of the parcel. Complaint, ¶6.

---

[1] The facts recited herein are taken from the averments of the Complaint, and are accepted as true for the purposes of this motion only. See Coyne v. Somerville, 972 F.2d 440 (1st Cir. 1992).

3.    Monahan desires to construct and maintain a patio area off the back of the plaintiff's home, including a small fence. Complaint, ¶7.

4.    The construction materials for the patio are porous brick. Complaint, ¶8.

5.    The fence is a two to three foot-high fence, made of slats that are spaced at three to four inch intervals. Complaint, ¶9.

6.    Monahan originally had a small wooden elevated ten by twelve foot shed located on the same parcel, which he removed on May 1, 2004. Complaint, ¶10.

7.    Monahan removed the shed because he was informed by the defendants that the shed was located in an alleged "no build" buffer zone under the Bylaw. Complaint, ¶11. The shed was within twenty feet of a wetland area, specifically salt marsh. Complaint, ¶14.

8.    On or about May 27, 2004, Monahan filed a Notice of Intent (the "Notice of Intent") with the Commission regarding the patio with a fence. Complaint, ¶12.

9.    The patio and fence is more than twenty-five feet from the salt marsh at its closest point. Complaint, ¶15.

10.    The Commission closed the hearing on September 1, 2003. Complaint, ¶21. The Order of Conditions was issued on December 21, 2004. Id.

11.    The Order of Conditions denied the project. Complaint, ¶20, Exhibit A.

12.    In its Order of Conditions, the Commission asserted that Monahan's proposal did not meet the requirements for the local Bylaw, "no-build and no disturb" zones of forty feet and twenty-five feet respectively. Complaint, ¶23.

13.    The patio and fence areas are not in the twenty-five foot "no build" zone. Complaint, ¶26.

14.    The patio and fence area is in the forty foot "no disturb" zone. Complaint, ¶27.

15.     The plaintiff's house, major portions of Route 1A, and numerous other homes along North End Boulevard are in the forty foot no disturb zone.  Complaint, ¶28.

16.     The Complaint was filed in Essex Superior Court on February 24, 2005. Complaint, generally.

III.    ARGUMENT

A.      Motion for Judgment on the Pleadings Standard

Under Fed.R.Civ.P. 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief may be granted against the defendant.  A Rule 12(b)(6) motion to dismiss is the usual and proper method of testing the legal sufficiency of a complaint.  Moore's Federal Practice, Vol. 2A, § 12.08, p. 2266 (2nd ed., 1984).  On a motion to dismiss, the reviewing court construes well-pleaded material allegations of complaint as admitted, Walker Process Equip. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1976), and all reasonable inferences are drawn in the plaintiff's favor. Wagner v. Devine, 122 F.3d 53, 58 n.2 (1st Cir. 1997).  The court is not bound, however, to accept as true conclusions of law or unwarranted deductions of fact.  See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).  Where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claims, dismissal is proper.  See Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968).

The pleading rules are "not entirely toothless," Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990) and the "minimal requirements are not tantamount to nonexistent requirements." Gilbert v. Cambridge, 932 F.2d 51, 62 (1st Cir. 1991).  A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Roth v. United States, 952 F.2d 611, 613

(1st Cir. 1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions." Fleming, 922 F.2d at 23.  "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992); Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989).

The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert, 932 F.2d at 62.[2] "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id.  Finally, to plead a justifiable case, a plaintiff must allege a "'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"  AVX Corp., 962 F.2d at 113 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

A jurisdictional challenge based on the ripeness of the complaint is considered a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  See Ernst & Young v. Depositors Economic Protection Corp., 862 F.Supp. 709, 713 (D.R.I. 1994); see also St. Clair v. City of Chico, 880 F.2d 199, 202 (9th Cir.), cert. denied, 493 U.S. 993 (1989).  "'[A] court's lack of subject matter jurisdiction is a nonwaivable issue that can be raised by either party at any point in the proceedings.'"  Fusaro v. Blakely, 40 Mass.App.Ct. 120, 123, 61 N.E. 2d 1339, 1341

---

[2] "A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990), even when such phantoms are robed by the pleader in the guise of facts.  We have been particularly insistent in section 1983 cases to require a fair degree of specificity -- a foundation of material facts -- to survive a motion to dismiss." Gilbert, 932 F.2d at 62 (citing Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983)), Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978).

(1996) (quoting Shea v. Neponset River Marine & Sportfishing, Inc., 14 Mass.App.Ct. 121, 129,

437 N.E. 250, 255 (1982)); see also Boston v. Mass. Port Authy., 364 Mass. 639, 645, 308 N.E.

2d 488, 493 (1974); Jones v. Jones, 297 Mass. 198, 202, 7 N.E. 2d, 1015, 1018 (1937). Here, the

plaintiff has asserted an unripe count for a regulatory taking in violation of the Fifth and

Fourteenth Amendments of the United States Constitution and Article X of the Declaration of

Rights. As the count lacks ripeness, this court is without subject matter jurisdiction over the

claim and it must be dismissed.

> B.    The Plaintiff's Appeal in the Nature of Certiorari Pursuant to
>        G.L. c.249 §4 is Untimely

No causes of action are explicitly stated in Counts 1-3, but the language utilized by the

plaintiff and the context of the Complaint indicate that they are an appeal in the nature of

certiorari under G.L. c.249 §4.[3] Pursuant to G. L. c. 249, § 4, "[a] civil action in the nature of

certiorari to correct errors in proceedings which are not according to the course of the common

law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in

the supreme judicial or superior court . . . . Such action shall be commenced within sixty days

next after the proceeding complained of" (emphasis added).

"Certiorari actions must be commenced within sixty days after the conclusion of the

proceeding being challenged. G. L. c. 249, § 4. Failure to do so is such a serious misstep that

such an action must be dismissed when not timely filed, even if the defendants fail to plead the

statute of limitations as an affirmative defense." Pidge v. Superintendent, Massachusetts

Correctional Inst., Cedar Junction, 32 Mass. App. Ct. 14, 17-18 (1992) (emphasis added, citation

and internal quotation omitted).

---

[3] It is unclear why there are three separate counts under G.L. c.249 §4. Of the three Counts, only Count 2 states the correct standard of review for an appeal from the decision of a Conservation Commission. Fieldstone Meadows Development Corp. v. Conservation Comm. of Andover, 62 Mass. App. Ct. 265, 816 N.E. 2d (2004).

6

It is undisputed that the defendants issued the Order of Conditions on December 21, 2004. Complaint, ¶ 21. It is equally undisputed that the Complaint was filed in Essex Superior Court on February 24, 2005, five days after the statute of limitations expired. See Complaint generally.

As Monahan failed to file the instant action within the statute of limitations, Counts 1-3 of the Complaint should be dismissed. Pidge, 32 Mass. App. Ct. at 17-18.

C.    The Plaintiff's Takings Claim Is Not Ripe (Count 4)

Monahan alleges that the Defendant Salisbury Conservation Commission took action which "constitutes a taking of the Plaintiff's property, without compensation, thus denying this [sic] rights under…the Fifth and Fourteenth Amendment of the U.S. Constitution." Complaint, ¶37.

In the takings context, "no constitutional violation occurs until just compensation has been denied." Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 194 n. 13 (1985). In Williamson, the United States Supreme Court held that a property owner's claim that the regulation of his property was so onerous that it amounted to a "taking" was premature, because the state provided for an inverse condemnation action to obtain just compensation for private property that had been allegedly taken.[4] Williamson, 473 U.S. at 194. The Court found that a taking claim is not ripe until petitioners "seek compensation through the

_____

[4] While this case analyzes takings in violation of the Fifth Amendment, the same analysis applies for alleged takings in violation of the Massachusetts Declaration of Rights. No Massachusetts appellate court has determined that Article X of the Massachusetts Declaration of Rights provides a landowner greater or lesser rights than the Fifth Amendment to the United States Constitution, for purposes of takings analysis. Cf. Bromfield v. Treasurer & Receiver General, 390 Mass. 665, 668, 459 N.E. 2d 445, 447 (1983) (state constitution affords parallel protection to United States Constitution of takings claims); Davidson v. Commonwealth, 8 Mass. App. Ct. 541, 546-547 n. 7, 395 N.E. 2d 1314, 1317 n.7 (1979). As the protection afforded under the state and federal constitutions in this regard is "parallel," no distinguishable state law standard or analysis exists. In short, regardless of whether the plaintiff's taking claim is based upon the state or federal constitutions, the analysis, and more importantly, the outcome, is the same.

procedures that the state has provided for doing so." Id. If the state "provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of yielding just compensation, an owner of property has no cognizable claim against the State in respect to an alleged confiscation." Gilbert v. City of Cambridge, 932 F.2d 51, 63 (1st Cir.), cert. denied 502 U.S. 866 (1991).

The United States District Court of Massachusetts has recognized that "Mass.Gen.L. ch. 79 provides a means by which a plaintiff may seek redress for an alleged deprivation of property" and "that remedy has been found to be adequate." Marietta Realty, Inc. v. Springfield Redevelopment Authority, 902 F.Supp. 310, 313 (D.Mass. 1995). In Marietta, the defendant had made an announcement that the plaintiff's property would be taken, but the defendant then failed to execute the acquisition. The plaintiff brought claims under 42 U.S.C. §1983 and §1985, claiming that the property had been taken due to the decrease in its value. The Court decided that, as the plaintiff had failed to pursue G.L. c. 79, the holding in Williamson barred the constitutional claims. Id.

As in Williamson and Marietta, Monahan here claims that the decision of a public authority has effectively taken his property, but he has failed entirely to pursue the remedies provided to him by G.L. c. 79, a comprehensive statutory scheme allowing property owners to pursue compensation for property allegedly taken. Under these circumstances, the holding in Williamson clearly controls. That holding bars a plaintiff from bypassing the judicial procedure created by the Legislature for the award of compensation for a taking by attempting to bring a takings claim pursuant to the U.S. Constitution. Accordingly, Monahan's claims for a taking should be dismissed for lack of ripeness.

D.    The Plaintiff Has Failed To State A Claim Upon Which Relief May Be Granted
For A Violation of His Rights to Equal Protection Under the Law (Count 5)

Monahan alleges that the Conservation Commission took action which "violates the

Plaintiffs' [sic] equal protection rights under the ...Fifth and Fourteenth Amendments of the U.S.

Constitution." Complaint, ¶38. "[A]s a general matter, the equal protection clause serves to

protect suspect classes and fundamental interests from inequitable treatment." Yerardi's Moody

Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d. 89, 94

(1st Cir. 1991) (Yerardi's II).

> "Liability in the instant type of equal protection case should depend on proof that
> (1) the person, compared with others similarly situated, was selectively treated;
> and (2) that such selective treatment was based on impermissible considerations
> such as race, religion, intent to inhibit or punish the exercise of constitutional
> rights, or malicious or bad faith intent to injure a person."

Yerardi's II, 932 F.2d at 92 (quoting Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board

of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989) (Yerardi's I) (internal citation omitted)) (emphasis

supplied). Monahan must therefore plead both that he was selectively treated in contrast with

others similarly situated and that the selective treatment was based on an impermissible

consideration. See Commonwealth v. Silva, 21 Mass.App.Ct. 536, 543, 488 N.E. 2d 34, 38

(1986); Commonwealth v. McHoul, 352 Mass. 544, 546-547, 226 N.E. 2d 556, 557-558 (1967)

(finding that the word "and" is interpreted conjunctively, whereas the word "or" is interpreted

disjunctively). Cases in which a party successfully shows it was singled out for different

treatment in violation of the equal protection clause are infrequent. See Yerardi's II, 932 F.2d at

94.

A plaintiff claiming an equal protection violation must first "identify and relate specific

instances where persons situated similarly 'in all relevant aspects' were treated differently,

instances which have the capacity to demonstrate that [plaintiff] were 'singled ... out for unlawful

9

oppression.' " <u>Dartmouth Review</u> v. <u>Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir.1989)

(citations omitted).

> "'[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.' <u>Dartmouth Review</u> v. <u>Dartmouth Coll.</u>, 889 F.2d 13, 19 (1st Cir.1989) (citation omitted); <u>see</u> <u>also</u> <u>Rodriguez-Cuervos</u> v. <u>Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 21 (1st Cir.1999)."

<u>Barrington Cove Ltd. Partnership</u> v. <u>Rhode Island Housing and Mortg. Finance Corp.</u>, 246 F.3d

1, 8 (1st Cir. 2001). Monahan does not identify <u>any</u> specific instances in which he received

differential treatment by the Commission from others similarly situated. Though he refers to

other existing structures allegedly located in the "no-disturb" area in which he seeks to place a

patio and a fence, he does not aver that the Commission granted relief for the structure to be

located in that area. As the other structures the plaintiff alludes to may have pre-existed the

regulation of the "no-disturb" zone, that mere existence does not suffice to state even the barest

factual allegation to support his argument that the Commission treated him differently from other

applicants, much less allege that the Commission subjectively intended to act in a discriminatory

manner against him. Complaint ¶28. This vague reference simply does not meet the standard for

pleading a claim for a violation of a property owner's equal protection rights under the

Fourteenth Amendment.

Monahan has also failed to plead any factual allegation to support an accusation that the

Commission acted on the basis of any impermissible consideration. In fact, he does not even

present an allegation that the Commission acted on such a basis. Generally, an equal protection

plaintiff must allege membership in a protected class. <u>See</u> <u>Rubinovitz</u> v. <u>Rogato</u>, 60 F.3d 906,

910 (1st Cir. 1995). The Supreme Court has recognized so-called "class of one" cases in limited circumstances. See, e.g., Village of Willowbrook v. Olech, 120 S.Ct. 1073 (2000). However, such a claim is only available where the plaintiff alleges, with sufficient specificity, that he is "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 1074.

The very same Court of Appeals whose decision was affirmed by the Supreme Court in Olech held that "class of one" equal protection claims must at least allege facts suggestive of an "improper motive" by the government defendant. Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (Posner, C.J.). Writing for the Seventh Circuit in Hilton, Chief Judge Posner explained:

> [W]e gloss 'no rational basis' in the unusual setting of "class of one" equal protection cases to mean that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position. We described the class of equal protection cases illustrated by Olech as "vindictive action" cases and said that they require "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant."

Id. (emphasis added). The Hilton Court stated the obvious reason for a requirement that equal protection plaintiff plead an improper motive or animus, noting that, "[i]f a merely unexplained difference in . . . treatment . . . established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws." Id.; Donovan v. City of Haverhill, 311 F.3d 74 (1st Cir. 2002) (finding that plaintiffs did not allege the elements of a viable equal protection claim, where they did not present a motive to explain why municipal Haverhill officials would treat them arbitrarily or irrationally, and instead merely asserted that the officials did so in bad faith with malicious intent); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002) (same).

11

This reasoning certainly adheres in this instance. In acting as quasi-judicial bodies, local land use boards are constantly called upon to act based upon the particular facts and circumstances of particular applications. Therefore, every disgruntled applicant could theoretically claim that he is being treated differently from other applicants. As the First Circuit reasoned in Creative Environments,

> Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency. . . [T]he conventional planning dispute – at least when not tainted with fundamental procedural irregularity, racial animus, or the like – which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not ... sit as a zoning board of appeals." Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

Creative Envirmts., 680 F.2d at 833; see also Wyman v. Zoning Bd. of Appeals of Grafton, 47 Mass.App.Ct. 635, 636, 715 N.E.2d 459, 460 (1999) (holding that equal protection claims are very seldom the means to seek review of the actions of land use agencies, with the door only slightly ajar for relief in "truly horrendous situations."). Monahan may not therefore infer malice merely from different treatment. See Yerardi's II, 932 F.2d at 93.

There are no specific facts pled in Monahan's Complaint that would support a claim that the alleged unequal treatment was either intentional or wholly arbitrary, particularly as those terms are explained in Hilton. While it is true that federal courts are generally guided by the concept of "notice pleading," See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993), this pleading standard is not toothless, and some minimal facts must be pled to assert "who did what to whom, when, were, and why."

12

Educadores Puertorriquenos en Accion, et al. v. Hernandez, 367 F. 3d 61, 68 (2004).  Complaints

may not validly rely on bald assertions, unsupportable conclusions, and opprobrious epithets.  Id.

(citing Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)).  Monahan has failed to

meet this minimum standard of pleading.  Indeed, the Complaint does not even allege that the

Commission acted on the basis of an impermissible motive.

     As Monahan has failed to plead adequate facts to state a claim for a violation of his equal

protection rights, such claim should be dismissed against the Town and the Conservation

Commission.

IV.     CONCLUSION

     WHEREFORE, the defendants respectfully request that Counts 1 through 5 of the

Complaint be dismissed as against them.

DEFENDANTS,

TOWN OF SALISBURY, SALISBURY
CONSERVATION COMMISSION,

Kathleen E. Connolly (BBO# 558706)
Katharine Goree Doyle (BBO# 634131)
John J. Goldrosen (BBO# 634434)
Kopelman and Paige, P.C.
  Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007